**In re CONWAY.**

No. 948—a.

District Court, D. New Jersey.

June 9, 1941.

Cole & Morrill and Mendon Morrill, all of Paterson, N. J., for creditors.

George Horowitz, of New York City, for debtor.

FAKE, District Judge.

The issues now to be considered arise on a certificate of review submitted by the Referee dated March 11, 1941, wherein it appears that he allowed certain creditors to withdraw their acceptances to an arrangement consummated in proceedings under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.

The certificate states the basis for the withdrawals as follows:

"The debtor filed his Chapter XI petition on September 4, 1940. His arrangement was rejected by creditors, an order of adjudication in bankruptcy was entered on October 25, 1940, and Gerald D. Stone, the elected trustee, immediately took possession and proceeded to act as the usual trustee in straight bankruptcy proceedings. However, on December 10, 1940, the District Court reversed the order of liquidation and reinstated the Chapter XI proceedings. During these proceedings, the debtor announced under oath that he had a substantial claim against the said trustee because of his misfeasance or malfeasance, or both, allegedly occurring during his temporary incumbency, and that this was considered by him as one of his assets. Learning of this claim against the trustee in whose election these creditors had participated, they decided to withdraw their acceptances. The creditors alleged that when they accepted the plan they had no knowledge of the claim against the trustee

and that if they had known of the claim their acceptances would not have been forthcoming.

"The debtor opposed the withdrawals on the grounds that the creditors knew of the claim against the trustee at the time of the acceptances, and that creditors were powerless to withdraw acceptances, even with court approval, in the absence of fraud or misrepresentation."

The Referee also found that the status of the debtor was not affected nor were any steps taken by the court or the debtor in reliance on the acceptances between the dates of the acceptances and the dates of the withdrawals, and that the withdrawals were made in good faith.

It was argued before the Referee and again here that the reasons above given to sustain the validity of the withdrawals were insufficient in law.

Looking back into the record it is found that the debtor Conway, who had been in business some eighteen years, did not come into this court as a hopeless debtor. The summary of his debts and assets accompanying his petition discloses that he owed $54,262.41 and his assets aggregated $77,-461.70. His difficulty was that he was not in a liquid position. The petition recites he was "unable to pay his debts as they mature." To avoid forced liquidation incident to general bankruptcy, he offered to enter into an arrangement with his creditors which, after amendments and further proceedings, resulted in its final consummation to which the withdrawals in question were directed.

It is apparent from the record before the Referee, and in the hearings before the court as well, that there has been and is now a certain amount of acrimony between Conway and some of his creditors, arising out of a feeling on Conway's part that he had been thrown into involuntary bankruptcy at a time when, if allowed to withdraw his Chapter XI petition and function freely, he might well have satisfied his creditors and saved his business within a short period of time. This was emphasized before me at a hearing on December 2nd last, and on considering the matter at that time I decided that the debtor, not having been examined pursuant to the mandatory requirement of Section 336 of Chapter XI of the Chandler Act, the order of adjudication, which had been entered against him and over his objection, should be set aside and the debtor given an opportunity to appear for examination. The validity of this action by the court has been attacked and is now pending decision before the Circuit Court of Appeals. No supersedeas bond was filed, however, and no stay was issued. Therefore, the proceedings have continued before the Referee.

In a hearing before the Referee on January 24th last, the debtor took the position that he had a cause of action against the trustee for malfeasance or misfeasance, and asserted that the value of this cause of action would then bring his estate into a position where his assets would again exceed his liabilities. The exact nature of the claim did not at that date appear. It was to some slight extent explained on February 11th last when, over the objection of his counsel, he testified: "* * * there was an order signed by Judge Grimshaw on October 25, directing Gerald P. Stone (the trustee) to fill orders on hand and conduct the business for three weeks in order to fill the orders on hand. He did not do that. He shipped $162, I believe, the differential in the value of the merchandise that should have been shipped at that time and the value of the merchandise as of today is a large sum of money." "Q. Over $19,000?" "A. I believe so." Then follows testimony as to missing parts of 20 sewing machines and the loss of a cutting knife and alleged damages for the loss of his right of doing business for two months, bringing the loss with other items to a total of $35,000. It should be said, however, that all this is very hazy and lacking in certainty. It does show, however, that the debtor either rightly or wrongly thought he had a grievance against the trustee arising out of the management of his estate, and that damages might be recovered for it which would enhance the value of the estate, thereby benefiting his creditors as well as himself.

In arguing for a withdrawal of the acceptances of Cohn-Hall-Marx Company and United Factors Corporation, counsel for the trustee said they were given "when the creditors thought that the debtor was going to release the trustee and perhaps the creditors' committee, and I have been informed by their counsel that in view of the fact that the release was not given at that time, and in view of the fact that they more seriously now consider the claim set forth by the debtor against the trustee and

174

perhaps creditors' committee, I desire to withdraw." All of which tends to further uncertainty as to whether the debtor was right or wrong in his attitude. It seems to me, however, that for present purposes it is quite unnecessary to pass upon the merits or demerits of the debtor's contention. The problem here is limited to an inquiry as to whether the position so taken by the debtor in any event furnishes a valid ground upon which to base a right of rescission of the arrangement contract. I do not think it does. To permit rescissions or withdrawals on these facts would tend to open the door to practices of coercion induced by fear of what might ensue on a full consideration of all the facts. Moreover, the debtor's position, if valid, would tend to increase the estate for the benefit of all the creditors. If, on the other hand, the debtor has been overzealous, prompted by anxieties incident to financial ruin and has no valid claim against the trustee, the policy of the law is such that in proceedings specially devised for the salvaging of estates of distressed but honest debtors, they should be afforded a full opportunity freely to express their honest convictions relating to choses in action without being forced into immediate liquidation as a consequence thereof. Moreover, the conduct of the bankrupt would disclose nothing fraudulent if he did fail to inform creditors that he thought he had a cause of action against the trustee.

The action of the Referee in allowing the withdrawals of the consents is reversed, but nothing herein shall be construed as passing upon the validity of any cause of action alleged by the debtor against the trustee.